# WILLKIE FARR & GALLAGHER LLP

787 Seventh Avenue
New York, NY 10019-6099
Tel: 212 728 8000
Fax: 212 728 8111

April 8, 2020

Honorable Paul A. Engelmayer
United States District Court Judge
U.S. District Court for the Southern District of New York
40 Foley Square
New York, New York 10007

    Re:    **United States v. Roland Martin, Docket No. 18-cr-00834-PAE-7**

Dear Judge Engelmayer,

    I represent defendant Roland Martin pursuant to the Criminal Justice Act in the above-captioned matter. Due to the extraordinary and compelling circumstances created by the ongoing COVID-19 pandemic, I respectfully move the Court on behalf of Mr. Martin for a reduction in sentence to time served pursuant to 18 U.S.C. § 3582(c)(1)(A), or alternatively, an order allowing Mr. Martin to serve the remainder of his sentence in home confinement.

    Under 18 U.S.C. § 3582(c), a court may, upon a finding of extraordinary and compelling circumstances, reduce the prison term of a defendant's sentence if the defendant has exhausted all administrative remedies with BOP, either by the BOP not responding to a request for compassionate release within 30 days, or by denying such a request for relief. On April 3, 2020, in accordance with 18 U.S.C. § 3582(c), I submitted an administrative request for compassionate release on behalf of Mr. Martin to Warden Derek Edge, the Warden of the Metropolitan Detention Center in Brooklyn (the "MDC"), where Mr. Martin is currently being housed, citing the extraordinary and compelling circumstances caused by COVID-19, which could not have been foreseen by the court at the time of sentencing.[1] Although the BOP has yet to rule on the request and 30 days has not yet passed, I file this motion with the Court now due to the uniquely exigent circumstances surrounding this pandemic, and because exhaustion of the 30 days should be excused and is likely not a jurisdictional limitation on this Court. Therefore, this Court should grant this motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A) immediately. Mr. Martin's risk of contracting COVID-19 due to the particularly confined and crowded conditions at the MDC is heightened by his underlying asthma and the recent lung injury he suffered after being stabbed at the MDC last May. As a result, Mr. Martin is in grave danger of experiencing serious illness if he does get infected with COVID-19. In the event the Court determines

---

[1] Ex. 1, Letter to Warden Edge.

Hon. Paul Engelmayer
April 8, 2020
Page 2

it must wait for the BOP's decision or for 30 days for the BOP to respond, I respectfully ask the Court to decide this motion immediately following that.

### Background

In June 2019, Mr. Martin pleaded guilty to one count of conspiracy to violate the racketeering laws under 18 U.S.C. § 1962(d), relating to the activities of the Nine Trey Gangsta Bloods gang ("Nine Trey"), which operates in and around Manhattan, the Bronx, and Brooklyn, New York. Before pleading guilty, Mr. Martin publicly renounced his membership in Nine Trey in the MDC, and shortly thereafter, on May 30, 2019, was viciously stabbed several times with prison shanks by two members of MS-13, a violent gang.[2] As a result of the attack, Roland sustained two collapsed lungs and a laceration to his liver.[3] Mr. Martin was treated at both NYU Langone and Bellevue Hospital, where he underwent surgery and was treated for a hemopneumothorax, requiring the placement of bilateral chest tubes.[4] Since the attack, Mr. Martin has experienced difficulty breathing, hypertension, insomnia, and nightmares.[5] Mr. Martin was prescribed an albuterol inhaler,[6] but continues to experience many of the after-effects of the attack, including trouble breathing, putting him at high risk of severe illness if he contracts COVID-19.

On October 10, 2019, this Court sentenced Mr. Martin to a below-Guidelines prison term of 66 months, with supervised release of three years, citing in part the near-death experience and severe injuries Mr. Martin suffered due to the stabbing.[7] Mr. Martin has already served about 16 months, or roughly 25 percent, of his sentence.

### The Court Has Jurisdiction to Rule on This Motion Now

This Court may rule on this motion now, even though the BOP has not yet responded and 30 days has not passed since the compassionate release application to the BOP. First, the statutory exhaustion requirement imposed by Section 3582 is not absolute. *Washington v. Barr*, 925 F.3d 109, 118 (2d Cir. 2019). Failure to exhaust may be excused where (1) it would be futile, either because agency decision-makers are biased or because the agency has already determined the issue; (2) the administrative process would be incapable of granting adequate relief; and (3) pursuing agency review would subject plaintiffs to undue prejudice. *Id.* at 118-19. As in U.S. District Court Judge Analisa Torres' decision issued just last week in *United States v. Perez*, 17-cr-513-3 (AT) (S.D.N.Y. Apr. 1, 2020), in which Judge Torres waived the exhaustion requirement due to an inmate's "undisputed fragile health," and granted his motion for reduction in sentence, "[a]ll three of these exceptions apply here." *Perez*, at 4. First, undue delay, if it results in catastrophic health consequences, could make exhaustion futile. *Washington*, 925 F.3d at 120-21. Second, "the relief the [BOP] might provide could, because of undue delay, become inadequate." *Id.* And third, any delay could unduly prejudice Mr. Martin because "even a few weeks' delay carries the risk of catastrophic health consequences." *Perez*, at 4. Here, given

---

| | |
|---|---|
| 2 | R. Martin PSR at 14, 20. |
| 3 | *Id.* at 20. |
| 4 | *See* Sept. 19, 2019 Sentencing Memorandum of R. Martin, Ex. K, R. Martin NYU Langone Medical Records at 5. |
| 5 | R. Martin PSR at 27. |
| 6 | *Id.* at 20. |
| 7 | ECF No. 367, Tr. of R. Martin Sentencing at 29. |

Hon. Paul Engelmayer
April 8, 2020
Page 3

how rapidly this coronavirus can spread and take the life of its victims, a difference of 30 days could tragically mean the difference between life or death for Mr. Martin.  Therefore, "given his unique circumstances and the exigency of a rapidly advancing pandemic," as well as Mr. Martin's "heightened risk of serious illness or death from COVID-19 due to his pre-existing medical issues," failure to exhaust should be excused.  *Id.* at *5.

Second, this Court is not limited jurisdictionally by Section 3582's 30-day requirement.  While the Second Circuit has not ruled on whether Section 3582 imposes a jurisdictional limitation on courts, other courts have.  *See United States v. Taylor*, 778 F.3d 667, 671 (7th Cir. 2015) ("§ 3582 is not part of a jurisdictional portion of the criminal code but part of the chapter dealing generally with sentences of imprisonment . . . [n]or is subsection (c) phrased in jurisdictional terms."); *see also United States v. Calton*, 900 F.3d 706, 711 (5th Cir. 2018) ("[W]hen Congress does not rank a statutory limitation on coverage as jurisdictional, courts should treat the restriction as nonjurisdictional in character."); *United States v. Green*, 886 F.3d 1300, 1306 (10th Cir. 2018) ("[A]bsent such a clear statement, . . . courts should treat the restriction as nonjurisdictional in character" (quoting *Sebelius v. Auburn Reg'l Med. Ctr.*, 568 U.S. 145, 153 (2013))).  Because there is no clear statement defining Section 3582 as jurisdictional in nature, the 30-day restriction should not be read to limit this Court's jurisdiction to decide on this motion before the BOP does.  Therefore, this Court has jurisdiction to consider Mr. Martin's compassionate release motion, and should not wait what could be a critical 30 days to decide Mr. Martin's fate.

### The Court Should Grant This Request for Compassionate Release

The Court should grant this motion pursuant to 18 U.S.C. § 3582(c)(1)(A), either immediately, or, in the case it decides it must wait for the BOP's determination or for 30 days, immediately after that.  The coronavirus epidemic currently gripping the world has created extraordinary and compelling circumstances that could not have been foreseen by this Court at the time of sentencing.  Though Mr. Martin has not served the majority of his sentence, the unique circumstances of COVID-19 combined with his underlying asthma and the recent attack on him, which further exacerbated his respiratory health problems, warrant a sentence reduction, or at the very least, an order allowing Mr. Martin to serve the remainder of his term in home confinement, where he will not pose a threat to the community.

The United States Sentencing Commission has defined what constitutes "extraordinary and compelling."  U.S.S.G. § 1B1.13, comment n.1.  First, extraordinary and compelling reasons for modification exist where "[t]he defendant is . . . suffering from a serious physical or medical condition . . . that substantially diminishes the ability to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."  U.S.S.G. § 1B1.13 comment n.1(A)(ii).  Mr. Martin's lung injuries suffered from his stabbing attack, combined with his asthma, inability to regularly wash his hands, lack of access to masks and gloves, and confinement in close quarters near hundreds of other inmates without proper social distancing measures in place for weeks puts Mr. Martin at extremely high risk of contracting the virus.  As of this letter, the MDC

Hon. Paul Engelmayer
April 8, 2020
Page 4

reports three inmates who have tested positive (but only seven tested),[8] and the disease is likely spreading throughout the inmate and staff population at the MDC due to the inherent inability to implement CDC-recommended social distancing and sanitizing guidance in a prison facility.[9]

Second, U.S.S.G. § 1B1.13 comment. n.1(D) authorizes release based on "an extraordinary and compelling reason other than, or in combination with, the [other] reasons described." The near-deadly attack Mr. Martin endured last May is such a compelling reason. No person should have to face life-endangering circumstances *once* during incarceration, let alone *twice* within one year. Mr. Martin remains in weakened health—particularly, his respiratory health—due to the stabbing, and is thus especially vulnerable to the coronavirus's deadly symptomatic tendencies.

Mr. Martin's risk of contracting COVID-19 is heightened due to the densely populated conditions at the MDC, where two inmates have already tested positive for COVID-19.[10] Further, the MDC has not taken the necessary steps to isolate "at risk" inmates, and does not appear to have the ability to do so because there are too many to isolate in such a confined space.[11] These conditions are likely to facilitate a rapid spread of the virus among inmates at the MDC. As U.S. District Court Judge Jesse Furman of the Southern District of New York put it, "the MDC is no place for someone considered to be high risk for COVID-19."[12] Incarcerated people have poorer health than the general population, and even in normal circumstances, medical care at the MDC is limited.[13] According to public health experts, incarcerated individuals "are at special risk of infection, given their living situations," and "may also be less able to participate in proactive measures to keep themselves safe."[14] Several inmates at BOP

---

[8] Letter from Warden M. Licon-Vitale and Warden D. Edge to Chief United States District Judge Mauskopf of the Eastern District of New York (April 7, 2020).

[9] https://www.forbes.com/sites/walterpavlo/2020/03/22/the-covid-19-prison-crisis-is-about-to-become-a-community-crisis/#60133623167a

[10] Letter from Warden M. Licon-Vitale and Warden D. Edge to Chief United States District Judge Mauskopf of the Eastern District of New York (April 3, 2020), https://img.nyed.uscourts.gov/files/reports/bop/20200403_BOP_Report.pdf. *See also* https://abcnews.go.com/Health/warnings-bureau-prisons-transporting-inmates-sources/story?id=69747416

[11] *United States v. Nkanga*, 18-CR-713 (JMF), Mar. 31, 2020 Order at 4.

[12] *Id.*

[13] Laura M. Maruschak *et al.*, *Medical Problems of State and Federal Prisoners and Jail Inmates*, 2011-12. NCJ 248491. Washington, D.C.: U.S. Department of Justice, Bureau of Justice Statistics, https://www.bjs.gov/content/pub/pdf/mpsfpji1112.pdf.

[14] *Achieving A Fair And Effective COVID-19 Response: An Open Letter to Vice-President Mike Pence, and Other Federal, State, and Local Leaders from Public Health and Legal Experts in the United States*, Mar. 2, 2020, https://bit.ly/2W9V6oS.

Hon. Paul Engelmayer
April 8, 2020
Page 5

facilities have already died due to COVID-19.[15]  Even though the BOP announced on March 31 that inmates in all of its facilities would began a two-week quarantine period in their cells,[16] this measure is likely too little, too late, given the coronavirus' well-documented ability to spread undetected in as many as 1 in 4 people,[17] and its incubation period of up to 14 days before symptoms develop.[18]  What has taken place at Rikers Island, where the number of inmates who tested positive for the coronavirus jumped from one to 21 in just three days,[19] should be a cautionary tale, and in all likelihood will be repeated at facilities like the MDC.  Even worse, the MDC does not have a ventilator, making it difficult for the facility to immediately treat in-need inmates who have contracted the coronavirus.[20]

For many of the reasons outlined above, legislators and public officials have called for a reduction in the prison population.  On March 19, U.S. Senator Kamala Harris wrote to the director of the BOP, stating that "[e]merging research has demonstrated how dangerous coronavirus is for the elderly and those with underlying conditions and compromised immune systems" and noting that "[u]nfortunately, many incarcerated individuals fall within those high risk categories."[21]  On March 26, U.S. Attorney General William Barr issued a directive to the BOP to reduce the prison population using home confinement, listing the vulnerability of an inmate as a main factor.[22]  On March 30, Congressman Jerold Nadler and Congresswoman Karen Bass wrote to Attorney General Barr, pleading with him to "immediately move to release medically-compromised … prisoners in the custody of the BOP."[23]  And, most recently, on April 3, 2020, Attorney General Barr issued a second memorandum, directing the BOP to "[i]mmediately maximize appropriate transfers to home confinement of all appropriate inmates held at . . . BOP facilities where COVID-19 is materially affecting operations."[24]

---

[15] https://www.forbes.com/sites/walterpavlo/2020/04/04/ag-william-barrs-new-memo-to-bureau-of-prisons-time-is-of-the-essence/#2ce069ce6805

[16] *See Bureau of Prisons COVID-19 Action Plan: Phase Five*, U.S. Department of Justice Federal Bureau of Prisons, Mar. 31, 2020, https://www.bop.gov/resources/news/pdfs/20200331_press_release_action_plan_5.pdf.

[17] https://www.nytimes.com/2020/03/31/health/coronavirus-a-transmission.html

[18] https://www.cdc.gov/coronavirus/2019-ncov/hcp/faq.html

[19] https://www.nbcnewyork.com/news/coronavirus/21-inmates-17-employees-test-positive-for-covid-19-on-rikers-island-officials/2338242/

[20] https://www.forbes.com/sites/walterpavlo/2020/03/22/the-covid-19-prison-crisis-is-about-to-become-a-community-crisis/#27a3a999167a

[21] https://www.harris.senate.gov/imo/media/doc/Harris%20Letter%20to%20Carvajal%20(3.19).pdf

[22] https://www.politico.com/f/?id=00000171-1826-d4a1-ad77-fda671420000

[23] https://judiciary.house.gov/uploadedfiles/3.30.20_letter_to_ag_barr_re_covid19.pdf

[24] https://www.justice.gov/file/1266661/download

Hon. Paul Engelmayer
April 8, 2020
Page 6

According to Barr, "appropriate inmates" include all at-risk inmates who have COVID-19 risk factors, which should include Mr. Martin.[25]

The serious lung damage sustained by Mr. Martin as a result of the attack, combined with his underlying asthma, put him in a medically-compromised, high risk position of experiencing serious illness if he does get infected with COVID-19. According to the CDC, such underlying health issues can make COVID-19 more dangerous, as the disease taxes already-burdened organs.[26] Further, more than 75 percent of the COVID-19 patients in a CDC study who required ICU treatment in the U.S. had underlying health issues, including chronic lung conditions.[27] Even though Mr. Martin was prescribed an inhaler after the stabbing, he still experiences difficulty breathing.[28] Exposure to the coronavirus would place Mr. Martin at risk of being placed on a ventilator. This is a grim possibility, as most coronavirus patients who end up on ventilators do not survive.[29] No person with health conditions like the ones Mr. Martin suffers from—incarcerated or not—deserves to be forced to stay in such perilous circumstances that put their life in serious danger, no less after suffering a near-death experience less than one year prior. Judge Torres recognized this just days ago in the *Perez* case by granting a request for compassionate release for a similarly situated inmate who was also the victim of a vicious beating in prison, which sent him to the hospital and caused him to now be in "weakened health" in the face of a "potentially fatal virus."[30]

We acknowledge that Mr. Martin has not served the majority of his sentence; however, he has served a significant portion, and could continue to serve the remainder of his sentence in home confinement, which would assure that he is not a danger to the safety of any other person or to the community. As we argued at sentencing, Mr. Martin has taken responsibility for his crimes and publicly renounced gang life in the MDC, resulting in an attempt on his life and near-death. This renunciation of gang life—which indirectly placed Mr. Martin's life in danger a second time due to the respiratory vulnerabilities he now experiences as a result of the attack in the face of this deadly virus—should also provide reassurance to the Court that Mr. Martin no longer poses a danger to the community. A few weeks ago, a federal court took an at-risk defendant's low likelihood to recidivate and minimal risk to public safety into account in granting compassionate release, even though the defendant had committed a violent crime and had been sentenced to a much longer term of imprisonment than Mr. Martin: life.[31]

---

[25]   *Id.*

[26]   https://www.npr.org/sections/health-shots/2020/04/01/824874977/underlying-health-disparities-could-mean-coronavirus-hits-some-communities-harde; https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/asthma.html

[27]   *Id.*

[28]   R. Martin PSR at 20.

[29]   https://www.npr.org/sections/health-shots/2020/04/02/826105278/ventilators-are-no-panacea-for-critically-ill-covid-19-patients

[30]   *United States v. Perez*, 17-cr-513-3 (AT), Apr. 1, 2020 Order at 7.

[31]   *United States v. Copeland*, 5-cr-135 (DCN), Mar. 24, 2020, Order.

Hon. Paul Engelmayer
April 8, 2020
Page 7

This Court should do the same.  Given the extraordinary and compelling circumstances created by the COVID-19 pandemic, and Mr. Martin's proven commitment to being a productive, non-violent member of society once he is released, Mr. Martin merits release from the MDC.

For these reasons, and based on upon these extraordinary and compelling circumstances, which were unforeseen at the time of sentencing in October 2019, Mr. Martin should be granted a sentence reduction pursuant to 18 U.S.C. § 3582(c), or alternatively, be permitted to serve the remainder of his sentence under home confinement.  If accorded such relief, Mr. Martin will reside with his fiancé, Britany Figueroa, at her apartment, which is located at 2201 First Avenue, New York, N.Y. 10029.  Mr. Martin will remain at that location if released, and will self-quarantine in order to protect himself from exposure to COVID-19.  Mr. Martin plans to enter the Stop the Violence program and to look for employment once self-quarantine restrictions are lifted.

Thank you for your consideration, and please contact me at (212) 728-8102 or mschachter@willkie.com if you have any questions or require any additional information.

Sincerely,

 /s/ Michael S. Schachter
Michael S. Schachter

The Court has received defendant Roland Martin's motion for compassionate release.  The Court directs the Government to respond no later than 5 p.m. tomorrow, April 9, 2020.

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

April 8, 2020