UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| UNITED STATES OF AMERICA, | |
|---|---|
| -v- | 18-CR-834-7 (PAE) |
| ROLAND MARTIN, | ORDER |
| Defendant. | |

PAUL A. ENGELMAYER, District Judge:

The Court has received a request from counsel for defendant Roland Martin seeking Martin's compassionate release from the Metropolitan Detention Center ("MDC") in Brooklyn, New York, pursuant to 18 U.S.C. § 3582(c), in light of the heightened risk that the COVID-19 pandemic presents for him. Dkt. 462 ("Def. Ltr."). The Government opposes this request. Dkt. 464 ("Govt. Ltr.").

Martin has been in prison since November 21, 2018. On June 27, 2019, he pled guilty to one count of participating in a racketeering conspiracy, based on his involvement in the violent Nine Trey Gangsta Bloods gang ("Nine Trey"), in which Martin was a high-ranking member. Before pleading guilty, Martin publicly renounced his membership in Nine Trey, and, shortly thereafter, was stabbed several times in prison, resulting in two collapsed lungs and a laceration of his liver. Def. Ltr. at 1–2. On October 11, 2019, this Court sentenced Martin to a below-Guidelines term of 66 months' imprisonment to be followed by three years' supervised release; the Court imposed a below-Guidelines sentence largely due to Martin's public renunciation of Nine Trey and the grievous injury he suffered as a result. *See* Dkt. 367

("Sentencing Tr.") at 32. On October 16, 2019, Martin filed a notice of appeal from his sentence and judgment. Dkt. 357.

On April 8, 2020, Martin filed a letter motion seeking a modification of his sentence on grounds relating to the COVID-19 pandemic. Def. Ltr. Martin asks the Court to modify his sentence to enable him serve the remainder of his prison term—approximately 50 months—in home confinement. *Id.* at 1–2. He argues that the after-effects of the attack he suffered in prison put him at high risk of severe illness if contracts COVID-19, and that removing him from the MDC would reduce the risk that he will be infected. *Id.*

On April 9, 2020, the Government filed its letter in opposition. Govt. Ltr. It opposes Martin's early release for reasons including that the Court lacks jurisdiction because Martin has filed a notice of appeal to challenge his sentence, that Martin has yet to serve the bulk of his sentence, that he has a long and violent criminal history, and that his instant offense is serious. *Id.* The Government also notes that the MDC has not placed Martin on its list of inmates at "high risk" from COVID-19. *Id.* at 3.

## I. Jurisdiction

In light of Martin's pending appeal, Court lacks jurisdiction to decide his motion. "The filing of a notice of appeal is an event of jurisdictional significance," which "confers jurisdiction on the court of appeals and divests the district court of its control over those aspects of the case involved in the appeal." *Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982). Although there are exceptions to this rule—*e.g.*, *Tancredi v. Met. Life Ins. Co.*, 378 F.3d 220, 225 (2d Cir. 2004) (attorneys' fees); *N.Y. State Nat'l Org. for Women v. Terry*, 886 F.2d 1339, 1350 (2d Cir. 1989) (proceedings on merits after grant or denial of preliminary injunction); *id.* (judgment which does not determine entire action); *Leonhard v. United States*, 633 F.2d 599, 610

(2d Cir. 1980) (clerical error)—none appears applicable here. *See United States v. Viola*, 555 F. App'x 57, 59–60 (2d Cir. 2014) (notice of appeal divests district court of ability to act "to modify a judgment substantively," although district court retains authority to "merely clarif[y]" its order (citations omitted)).

Under these circumstances, this Court is without authority to "rule on any motion affecting an aspect of the case that [is] before the [Court of Appeals]." *Ching v. United States*, 298 F.3d 174, 180 n.5 (2d Cir. 2002); *see also, e.g.*, *Berman v. United States*, 302 U.S. 211, 214 (1937) (rule applies in criminal cases); *United States v. Katsougrakis*, 715 F.2d 769, 777 (2d Cir. 1983) (same); *United States v. Afriyie*, No. 16 Cr. 377 (PAE), 2017 WL 6375781, at *3 (S.D.N.Y. Dec. 11, 2017) (same). Once Martin filed his notice of appeal challenging the Court's sentence, jurisdiction over the questions raised in his § 3582(c) motion transferred to the Second Circuit.

Federal Rule of Criminal Procedure 37 anticipates precisely the jurisdictional issue present here. Rule 37 provides, in relevant part, that "[i]f a timely motion is made for relief that the court lacks authority to grant because of an appeal that has been docketed and is pending, the court may: (1) defer considering the motion; (2) deny the motion; or (3) state either that it would grant the motion if the court of appeals remands for that purpose or that the motion raises a substantial issue." Fed. R. Crim. P. 37(a). The advisory committee notes list "motions under 18 U.S.C. § 3582(c)" as one of three types of motions for which the drafters "anticipate[] that Criminal Rule 37 will be used primarily if not exclusively." Fed. R. Crim. P. 37 advisory committee's note (2012). Reflecting this Circuit's longstanding approach in both civil and criminal cases—*see, e.g.*, *United States v. Camacho*, 302 F.3d 35, 36–37 (2d Cir. 2002); *King v. First Am. Investigations, Inc.*, 287 F.3d 91, 94 (2d Cir. 2002); *Toliver v. Cty. of Sullivan*, 957

3

F.2d 47, 49 (2d Cir. 1992)—this rule allows district courts to deny, but not to grant, a motion for which it lacks jurisdiction due to a pending appeal.

## II. Merits

Because the Court would deny Martin's § 3582(c) motion if he had not filed a notice of appeal, in the interests of judicial economy, the Court reaches the merits, pursuant to Rule 37, and denies the motion.

Under 18 U.S.C. § 3582(c)(1)(A), "upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons [("BOP")] to bring a motion on the defendant's behalf," a court may reduce such defendant's sentence if it finds that "extraordinary and compelling circumstances warrant such a reduction," and that "such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A)(i). The Court must also consider the "factors set forth in section 3553(a) to the extent that they are applicable." *Id.* § 3582(c)(1)(A).

Here, the Government argues, at the threshold, that Martin's motion should be denied because he has failed to exhaust his administrative remedies, in that the BOP had not made a final decision and 30 days have not elapsed since Martin moved for compassionate release Dkt. 464 at 5–6. The Court need not reach this argument, however, because the Court concludes that a reduction of Martin's sentence is not warranted for two independent reasons. Such a reduction would not be "consistent with the applicable policy statements issued by the Sentencing Commission," 18 U.S.C. § 3582(c)(1)(A)(i), nor would it be supported by the "factors set forth in section 3553(a)," *id.* § 3582(c)(1)(A).

Congress tasked the Sentencing Commission with identifying the circumstances that are sufficiently extraordinary and compelling to justify a reduction in sentence. *United States v.*

*Ebbers*, — F. Supp. 3d —, No. (S4) 02 Cr. 1144-3 (VEC), 2020 WL 91399, at *4 (S.D.N.Y. Jan. 8, 2020) (quoting 28 U.S.C. § 994(t)). Relevant here, the Commission's policy statement and its corresponding commentary on § 3582(a)(1)(A) state that a court may reduce a sentence for "extraordinary and compelling reasons," including where the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover."[1] U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A). The defendant, however, must not be a danger to the community and the reduction must be consistent with the Commission's policy statement. *Id.* § 1B1.13(2)–(3).

The first of these factors favors Martin's early release. The COVID-19 pandemic is extraordinary and unprecedented in modern times in this nation. It presents a clear and present danger to free society for reasons that need no elaboration. COVID-19 may present a heightened risk for Martin, who suffered a punctured lung last year.[2] The crowded nature of federal detention centers such as the MDC present an outsize risk that the COVID-19 contagion, once it

---

[1] U.S.S.G. § 1B1.13(1)(A) references only "a motion of the Director of the Bureau of Prisons" because it has not yet been updated to reflect the First Step Act of 2018, Pub. L. No. 115-391, 132 Stat. 5194, which allows defendants independently to seek compassionate release relief from federal courts. *Ebbers*, 2020 WL 91399, at *1, 4.

[2] The Government argues that "defendant appears to be at no greater risk than any other inmate as a result of COVID-19" because it is "unaware of any medical analysis" that a person who suffered a punctured or collapsed lung and has since healed is at higher risk of adverse consequences from COVID-19. Govt. Ltr. at 9. The Government also notes that there is no indication in any of the medical records submitted to the Court in connection with sentencing that Martin is asthmatic. *Id.* at 9 n.5. The Court assumes, *arguendo*, that Martin, who defense counsel represents is still recovering from his lung injury, is at higher risk than the average inmate.

gains entry, will spread.[3] And, realistically, a high-risk inmate who contracts the virus while in prison will face challenges in caring for himself. For these reasons, in the past three weeks, numerous courts, including this one, have ordered the temporary release of inmates held in pretrial or presentencing custody and, in more limited instances, the compassionate release of inmates serving federal sentences.[4]

---

[3] *See* Timothy Williams, et al., *'Jails Are Petri Dishes': Inmates Freed as the Virus Spreads Behind Bars*, N.Y. Times (Mar. 30, 2020), https://www.nytimes.com/2020/03/30/us/coronavirus-prisons-jails.html; *see also United States v. Nkanga*, No. 18 Cr. 713 (JMF), 2020 WL 1529535, at *1 (citing *Interim Guidance on Mgmt. of Coronavirus Disease 2019 (COVID-19) in Correctional and Detention Facilities*, Ctrs. for Disease Control and Prevention 2 (Mar. 23, 2020), https://www.cdc.gov/coronavirus/2019-ncov/downloads/guidance-correctional-detention.pdf) (highlighting danger faced by those in jails and prisons).

[4] *See, e.g.*, *United States v. Chandler*, No. 19 Cr. 867 (PAC), 2020 WL 1528120, at *1–3 (S.D.N.Y. Mar. 31, 2020) (granting bail application, pursuant to 18 U.S.C. § 3142(i), of defendant charged with being a felon in possession of a firearm); *United States v. McKenzie*, No. 18 Cr. 834 (PAE), 2020 WL 1503669, at *2–3 (S.D.N.Y. Mar. 30, 2020) (granting bond pending sentencing, pursuant to 18 U.S.C. § 3145(c), to defendant who had pleaded guilty to single count of assault with a deadly weapon and had previously been released on bond); *United States v. Hernandez*, No. 19 Cr. 169 (VM), 2020 WL 1503106, at *1 (S.D.N.Y. Mar. 30, 2020) (granting bail application, pursuant to § 3142(i), of 64-year-old defendant with asthma and high blood pressure that placed him "at a substantially heightened risk of dangerous complications should he contract COVID-19"); *United States v. Witter*, No. 19 Cr. 568 (SHS), Dkt. 40 at 2–3 (S.D.N.Y. Mar. 26, 2020) (granting bond pending sentencing, pursuant to § 3145(c), to defendant who had pleaded to a narcotics offense); *United States v. Perez*, No. 19 Cr. 297 (PAE), 2020 WL 1329225, at *1 (S.D.N.Y. Mar. 19, 2020) (granting bail application, pursuant to § 3142(i), of 65-year-old defendant with COPD, in light of "unique confluence of serious health issues and other risk factors facing this defendant, . . . which place him at a substantially heightened risk of dangerous complications should [he] contract COVID-19"); *United States v. Knox*, No. 15 Cr. 445 (PAE), Dkt. 1088 (S.D.N.Y. Apr. 10, 2020) (granting compassionate release motion, pursuant to 18 U.S.C. § 3582(c), of defendant who had less than 7 months left to serve out of 88-month sentence); *United States v. Jasper*, No. 18 Cr. 390 (PAE), Dkt. 441 (S.D.N.Y. Apr. 6, 2020) (ordering compassionate release of defendant with Crohn's disease who had served all but 34 days of a 4-month sentence); *see also United States v. Stephens*, — F. Supp. 3d —, No. 15 Cr. 95, 2020 WL 1295155 (AJN), at *3 (S.D.N.Y. Mar. 19, 2020) (granting defendant's request for reconsideration of bail conditions and releasing him to home confinement, while noting that, in the alternative, § 3142(i) would necessitate his temporary release).

The Court cannot find, however, that Martin "is not a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2). First, the underlying conduct that led to Martin's sentence in this case gravely endangered the safety of the community. As one of the highest-ranking members of the Nine Trey gang, Martin, known within the gang as "Ro Murda," personally participated in three incidents in March and April 2018 in which gang members either brandished weapons or fired gunshots in public spaces, including Times Square and the Barclays Center. Notably, Martin committed these crimes, including an April 3, 2018 armed robbery of gang rivals in midtown Manhattan, less than two months after he completed serving nine years' imprisonment for a drug offense. Govt. Ltr. at 9.

Second, Martin's extensive criminal history reflects a pattern of violent and dangerous conduct. Martin has been convicted repeatedly for robbery, gun possession, and narcotics offenses. *See* Govt. Ltr. at 2 (page-long chart providing snapshot of Martin's convictions, as reported in the Presentence Investigation Report). As the Court noted at sentencing, "none of [Martin's] prior arrests, convictions, sentencings or stints in jail did anything to deter [Martin] from joining a dangerous, violent, and drug-dealing gang," and "[i]t is unavoidable that there is a risk once [Martin is] released from prison that [he] will return to crime." Sentencing Tr. at 26–27. Although the prospect of contracting COVID-19 undeniably presents a serious risk to Martin's health, his release some 50 months early would exposes the community to a serious and unacceptable risk that he would resume violence.

The Court further cannot find that the application of the § 3553(a) factors favors such an early release. Two such factors, to be sure, are the "history and characteristics of the defendant," and "the need to provide the defendant with needed . . . medical care." 18 U.S.C. § 3553(a). These factors favor Martin's early release in light of the COVID-19 pandemic for the reasons

7

discussed above. But they are outweighed by the combined force of several other factors: "the nature and circumstances of the offense" and "the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law . . . to provide just punishment for the offense . . . to afford adequate deterrence to criminal conduct," and "to protect the public from further crimes of the defendant." For the reasons stated in detail at Martin's sentencing, which the Court incorporates by reference, a sentence in the range of 66 months' imprisonment was necessary to achieve those goals. Converting Martin's sentence to one of home confinement, when he has served just 16 months of a 66-month term of incarceration, would disserve these important § 3553(a) factors. *See, e.g.*, *United States v. Credidio*, No. 19 Cr. 111 (PAE), Dkt. 62 (S.D.N.Y. Mar. 30, 2020) (denying, as inconsistent with § 3553(a) factors, compassionate release motion for reduction of sentence to home confinement for recently sentenced 72-year-old defendant where defendant had served only two months of a 33-month sentence); *United States v. Denard Butler*, No. 18 Cr. 834 (PAE), Dkt. 461 (S.D.N.Y. Apr. 7, 2020) (similarly denying compassionate release motion for lower-ranking Nine Trey defendant diagnosed with asthma where defendant had served only 15 months of a 60-month sentence).

Accordingly, finding that Martin continues to pose a danger to the community and that the § 3553(a) factors do not support a reduction of sentence, the Court denies Martin's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(i).

SO ORDERED.

_____
PAUL A. ENGELMAYER
United States District Judge

Dated: April 10, 2020
       New York, New York

8